IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **CITY OF DANBURY, CONNECTICUT,** | MDL No. 2:18-mn-2873-RMG |
| **Plaintiff,** | This Document Relates To: |
| **v.** | **Case No.**  2:23-cv-05091-RMG |
| **AGC CHEMICALS AMERICAS INC.;** | **COMPLAINT** |
| **ANGUS FIRE ARMOUR CORPORATION;** | **JURY TRIAL DEMANDED** |
| **ARCHROMA U.S., INC.;** | |
| **ARKEMA INC.;** | |
| **BASF CORPORATION;** | |
| **BUCKEYE FIRE EQUIPMENT CO.;** | |
| **CARRIER GLOBAL CORPORATION;** | |
| **CHEMDESIGN PRODUCTS, INC.;** | |
| **CHEMGUARD, INC.;** | |
| **CHEMICALS INC.;** | |
| **CHUBB FIRE, LTD.;** | |
| **CIBA, INC. (F/K/A CIBA SPECIALTY CHEMICALS CORPORATION);** | |
| **CLARIANT CORP.;** | |
| **DEEPWATER CHEMICALS, INC.;** | |
| **DYNAX CORP.;** | |
| **KIDDE FIRE FIGHTING, INC.;** | |
| **KIDDE PLC INC.;** | |
| **NATIONAL FOAM, INC. (A/K/A CHUBB NATIONAL FOAM);** | |
| **NATION FORD CHEMICAL COMPANY;** | |
| **RAYTHEON TECHNOLOGIES CORPORATION;** | |
| **THE ANSUL COMPANY;** | |
| **TYCO FIRE PRODUCTS LP;** | |
| **UTC FIRE & SECURITY AMERICAS CORPORATION, INC.;** | |
| **WILLIAMS FIRE & HAZARD CONTROL, INC;** | |
| **JOHN DOE DEFENDANTS 1-50,** | |
| **Defendants.** | |

1

Plaintiff, City of Danbury, Connecticut, files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Per- and polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoroheptanoic acid ("PFHpA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), — found in the City of Danbury, Connecticut, public water supply system and in the groundwater that serves as supply sources for that system.   As the manufacturers and sellers of products that contain PFAS compounds, Defendants have discharged PFAS into, or are otherwise responsible for PFAS released into, the waters that serve as the supply sources for Plaintiff's public water supply systems.

2.      For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports, military facilities, and other locations throughout the State of Connecticut.

3.      Defendants knew, or should have known, that PFAS and related constituents in Defendants' products and by-products present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged, and were otherwise responsible for the release of PFAS into the environment

without sufficient containment, caution, warning, testing, or use of alternative feasible products or components.

4.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF Products knowing that the PFAS in these Products would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants. Despite their knowledge, Defendants kept this information hidden from the public, including the Plaintiff.

5.      Defendants' acts and omissions resulted in PFAS seeping into the groundwater and surface water and into a flow zone adjacent to the Plaintiff's raw water sources. As a result of the occurrence of PFAS in the environment from Defendants' products, Plaintiff has been and will be required to fund and implement capital costs, and has and will in the future incur ongoing operation and maintenance costs.

6.      With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

8.      Plaintiff brings this civil action directly in In Re: Aqueous Film-Forming Foams Products Liability Litigation, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston

Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72). Plaintiff designates the United States District Court for the District of Connecticut as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District. But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

9.    Plaintiff is a municipal government entity located in Danbury, Connecticut.

10.    Plaintiff owns and operates a water treatment and distribution utility that serves approximately 65,000 citizens in and near the Danbury, Connecticut region.

11.    Plaintiff owns and maintains eight reservoirs, one well, 2 water treatment plants, 14 pump stations, 9 storage tanks, 200 miles of water pipe, and 2,100 fire hydrants. Approximately 6.5 million gallons of water per day are produced through daily management of this water supply system.

12.    This action is brought by the Plaintiff to recover damages and seek other redress for harm caused by Defendants' tortious acts relating to PFAS as outlined herein. Defendants' actions have caused and continue to cause damages to Plaintiff.

## DEFENDANTS

13.    The term "Defendants" refers to all Defendants named herein jointly and severally and includes presently unidentified Defendants, herein named as John Does 1-50, whose activities also contaminated and polluted the Plaintiff's raw water sources in same or similar ways as alleged herein, but also other ways such as carrying on their business operations.

14.    Defendant Kidde PLC Inc. ("Kidde") is a Delaware corporation authorized to do business in New York, with principal offices at One Carrier Place, Farmington, CT 06034. Upon

4

information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

15.     Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, MA 01721.  Upon information and belief, Kidde Fire Fighting, was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

16.     Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation, with principal offices at 13995 Pasteur Boulevard, Palm Beach Gardens, FL 33418.  Upon information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business.  Upon information and belief, Carrier is the parent corporation of Kidde.

17.     Defendant National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

18.     At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds for sale and use throughout the United States.

19.     Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with principal offices at 141 Junny Road, Angier, NC 27501.

20.     Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

21.     At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

22.     Defendant Tyco Fire Products L.P. ("Tyco") is a Delaware limited partnership with principal offices at 1400 Pennbrook Parkway, Lansdale, PA 19446. Upon information and belief, Tyco is the successor-in-interest to Ansul, Inc. ("Ansul").

23.     Defendant Chemguard, Inc. is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

24.     At all times relevant, Chemguard, Inc. manufactured fire suppression products, including AFFF that contained PFAS compounds.

25.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

26.     Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with principal offices at 13995 Pasteur Blvd., Palm Beach Gardens, FL 33418. Upon information and belief, UTC was a division of United Technologies Corporation.

27.     Defendant Raytheon Technologies Corporation ("Raytheon") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Upon information and belief, Raytheon is successor-in-interest to United Technologies Corporation.

28.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

29.    At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

30.    Defendant Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) ("Ciba") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

31.    Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.  Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.

32.    Defendant Dynax Corp. ("Dynax") is a Delaware corporation, with principal offices at 103 Fairview Park Drive, Elmsford, NY 10523.

33.    Defendant Clariant Corp. ("Clariant") is a New York corporation, with principal offices at 4000 Monroe Road, Charlotte, NC 28205.

34.    Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal offices at 5435 77 Center Dr., #10 Charlotte, NC 28217.

35.    Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation, with principal offices at 900 1st Avenue, King of Prussia, PA, 19406.

36.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation, with principal offices at 2 Stanton Street, Marinette, WI 54143.

37.    Defendant AGC Chemicals Americas Inc. ("AGC") is a Delaware corporation, with principal offices at 55 E Uwchlan Ave, Suite 201, Exton, PA 19341.

38.     Defendant Chemicals Inc. is a Texas corporation, with principal offices at 12321 Hatcherville Road, Baytown, TX 77521.

39.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation, with principal offices at 196122 E County Road 40, Woodward, OK 73801.

40.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation, with principal offices at 2300 Banks Street, Fort Mill, SC 29715.

41.     Upon information and belief, Defendants Chemicals, Inc., Deepwater, and Nation Ford designed, manufactured, marketed, distributed, and sold fluorosurfactant products containing PFAS for use in the manufacture of AFFF products throughout the United States.

42.     Defendant Williams Fire & Hazard Control, Inc. ("Williams") is a Texas corporation, with principal offices at 9605 Richard Wycoff Drive, Port Arthur, TX 77640.

43.     Upon information and belief, Defendant Williams distributed and/or sold AFFF products containing PFAS throughout the United States.

44.     Upon information and belief, Defendants John Does 1-50 also manufactured, distributed, and/or sold products that contain PFAS compounds.  Plaintiff presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  Plaintiff will amend this Complaint to show their true names if and when they are ascertained.

## PER- AND POLYFLUOROALKYL SUBSTANCES

45.     PFAS compounds are a family of synthetic chemicals, also known as perfluorochemicals ("PFCs"), which have been used for decades to make products that resist heat, oil, stains, grease and water.

46.    PFAS chemicals were created in the 1940s and 1950s and were incorporated into certain products due to their surfactant properties.  Over the years, PFAS chemicals have been sold to multiple companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

47.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world.  AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

48.    AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants.  When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel.  It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

49.    PFAS are extremely persistent in the environment and resistant to typical environmental degradation processes.  In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies.  PFAS also have high water solubility (mobility) and low biodegradation (persistence).

50.    PFAS, in particular PFOA and PFOS, have been identified as "emerging contaminants" by the United States Environmental Protection Agency ("EPA").  This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

51.     PFAS, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

52.     Certain PFAS compounds, such as PFOA (which is also known as "C8" because it contains eight carbon compounds) and PFOS, have been the focus of EPA investigations.

53.     United States EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

54.     In January 2009, EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data.  EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

55.     In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

56.     UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

57.    Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

58.    In addition, the UCMR 3 sampling effort did not combine PFAS levels, thus not taking into account added effects from the presence of more than one PFAS compound.

59.    In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure. EPA acknowledged then, and continues to acknowledge, that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

60.    In EPA's February 2020 PFAS Action Plan:  Program Update, the agency included information on a newly approved laboratory method – Drinking Water Method 533 – for testing and detecting PFAS in drinking water.  This new method allows for more effective measurement of PFAS in drinking water.

61.    In October 2021, EPA released its PFAS Strategic Roadmap, outlining the agency's proposed actions related to PFAS contamination, with a focus on researching PFAS exposures, effects, and interventions, preventing further PFAS contamination, and cleaning up existing PFAS contamination.

62.    On December 27, 2021, EPA published the final fifth Unregulated Contaminant Monitoring Rule, which will require sample collection for 29 PFAS between 2023 and 2025.

63.    On June 15, 2022, EPA issued updated HALs for four PFAS compounds, including final HALs for GenX and PFBS at 10 ppt and 2,000 ppt, respectively, and interim HALs for PFOA and PFOS at 0.004 ppt and 0.02 ppt, respectively.

64.    On August 26, 2022, EPA issued a proposal to designate PFOA and PFOS, including their salts and structural isomers, as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCA").  The public comment period for the proposal closed on November 7, 2022, and EPA is in the process of reviewing comments.

65.    Regulatory agencies are also working to determine the extent of PFAS contamination within the state and participating in related discussions with federal, state and local partner agencies.

66.    While more studies have been conducted, and thus, more is known regarding PFOA and PFOS, all PFAS compounds have generally demonstrated similar characteristics to PFOA and PFOS.

67.    Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

68.    As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

69.    Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

70.    Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety.   Nonetheless, Defendants negligently and recklessly manufactured,

distributed, and/or sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

71.     Defendants' actions have directly resulted in contamination of raw water sources that make up Plaintiff's water supply system.  Because Defendants' PFAS has infiltrated the waters that serve as the source for Plaintiff's public water supply system, contamination of Plaintiff's water supply is recurring and continuing.

## PLAINTIFF'S WATER SYSTEM IMPROVEMENTS

72.     Plaintiff is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements.  Plaintiff must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

73.     As a direct result of Defendants' actions, Plaintiff has had to address PFAS contamination.  In doing so, Plaintiff has conducted and continues to conduct investigations related to PFAS, which requires funding by Plaintiff, including costs for its personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, and costs to analyze available alternatives.

74.     Plaintiff will continue to incur significant costs, for ongoing monitoring and any capital improvements that may be deemed necessary to reduce and/or remove PFAS contamination to assure sufficient non-PFAS impacted water supplies.  Operation and maintenance measures for any such improvements will be required and will add further to the costs Plaintiff has incurred and will incur to address Defendants' PFAS contamination.

## COUNT 1 – STRICT LIABILITY AGAINST ALL DEFENDANTS

75.     Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

76.    Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, either as a necessary component of their products or a foreseeable and/or known by-product(s), which Defendants knew or should have known would result in contamination of the environment, including the waters that serve as the water source for Plaintiff's public water supply system, thereby causing damage to Plaintiff.

77.    Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds would have on the environment and the activities and rights of others.

78.    Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS-containing products and by-products would be discharged, released, or disposed of in the environment.

79.    By causing PFAS contamination and the resulting impact to Plaintiff's public water supply systems, Defendants engaged in abnormally dangerous activity for which they are strictly liable.

80.    As a result of Defendants' abnormally dangerous activity, Plaintiff has incurred, and will continue to incur, investigation, cleanup, remediation, and removal costs and damages related to PFAS contamination.

## COUNT 2 – STRICT LIABILITY (FAILURE TO WARN) AGAINST ALL DEFENDANTS

81.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

82.    Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals, products, and by-products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the waters that serve as the water source for Plaintiff's public water supply systems, thereby causing damage to Plaintiff.

83.     Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds, chemicals, products, and by-products would have on the environment and the activities and rights of the Plaintiff and others.

84.     Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, the bioaccumulation of PFAS in humans, animals, and aquatic life, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

85.     Defendants should have known the chemical ingredients and formulas of their products, and the by-products of their products, once they entered the environment.

86.     Use of the Manufacturer Defendants' AFFF products in the exact manner in which they were designed by the Manufacturer Defendants to be used without adequate safety measures poses a substantial likelihood of resulting in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

87.     Use of the Manufacturer Defendants' AFFF products in the exact manner in which they were designed by the Manufacturer Defendants did in fact result in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

88.     The Manufacturer Defendants knew or should have known that the use of their AFFF products in the exact manner in which they were designed to be used, would result in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

89.     Knowing of the dangerous and hazardous properties of their products, the Manufacturer Defendants had a duty to warn of the hazards associated with their projects contaminating the environment, including drinking water.

90.     The Manufacturer Defendants' AFFF products containing PFAS should not have been manufactured in the particular design they were, but having been manufactured, adequate instructions and warnings should have been provided with the products.

91.     Defendants failed to provide warnings or instructions sufficient to notify the users and/or the public and/or the Plaintiff of the dangers inherent in Defendants' products and by-products.

92.     Defendants' failure to provide proper and adequate notice or instruction regarding the dangers of their products and by-products to human health and the environment rendered Defendants' PFAS-containing products and PFAS by-products unreasonably dangerous for the purposes intended and promoted by Defendants.

93.     Defendants' duty to warn is and was a non-delegable duty.

94.     The Defendants intentionally, recklessly, and without regard for human life and the environment covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to the PFAS chemicals, compounds, products, and by-products as such relate to the persistence and high mobility of PFAS in the environment, the bio-accumulation of PFAS in humans, animals, and aquatic life, and the environmental fate and transport. Defendants not only failed to warn the public and the Plaintiff of same, but, at various times, failed to warn certain manufacturers and sellers of AFFF including some of the Defendants in this civil action.

95.     This failure to warn or adequately instruct regarding the dangers associated with use of Defendants' products directly and proximately caused harm and damages to Plaintiff.

96.     Had the Manufacturer Defendants provided adequate warnings, measures could have been taken to avoid or decrease exposure to PFAS.

97.    Had the Manufacturer Defendants provided adequate warnings, the users of AFFF could have taken steps to reduce or prevent the release of PFAS into the environment.

98.    Adequate warnings should have included, but are not limited to:

a.    a warning not to allow the AFFF to enter soils, sediment, groundwater, or waterways;

b.    a warning to immediately collect AFFF upon use; and

c.    a warning that, because the Manufacturer Defendants' AFFF contained constituents such as PFAS, which pose risks to human health and the environment, use of AFFF containing PFAS requires immediate containment, remediation and removal after use.

99.    The Manufacturer Defendants' failure to provide adequate and sufficient warnings for the AFFF products they manufactured, marketed, and sold rendered the AFFF a defective product.

100.    Because, or to the extent, the AFFF products were used exactly as designed, the harm resulting from their use was reasonably foreseeable, and thus proximately caused by the Manufacturer Defendants' actions or inaction.

101.    As a direct and proximate result of the Manufacturer Defendants' defective design of the AFFF products, Plaintiff's property is contaminated by PFAS, proximately resulting in damages.

102.    The failure to warn and deceptive conduct of Defendants, as to the public, the Plaintiff, and certain manufacturers and sellers of AFFF including some of the Defendants in this civil action, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Defendants for failure to warn.

## COUNT 3 – STRICT LIABILITY (DESIGN DEFECT) AGAINST ALL DEFENDANTS

103.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing

paragraphs of this Complaint as if they were set forth fully herein.

104.    Defendants herein, at all times relevant, were in the business of the design, manufacture, sale and distribution of PFAS-containing products, chemicals, and compounds, and/or the foregoing use of which created PFAS in the environment as part of the foreseeable use of AFFF products.

105.    Defendants designed, manufactured, marketed, and sold defective products that were unreasonably dangerous for their intended use. The AFFF manufacturing Defendants either knew of the dangers contained in their AFFF products or chose to ignore the chemicals, compounds, and by-products of their AFFF products.

106.    When Defendants placed their PFAS-containing AFFF products into the stream of commerce, the products were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

107.    The products designed, manufactured, sold, and distributed by Defendants reached consumers and users without substantial change to the condition and nature of the products. The Defendants made their AFFF products pursuant to their own formulas, research, design specifications, and testing.

108.    Defendants, with knowledge of the risks associated with the use of PFAS compounds, failed to use reasonable care in the design of PFASs.

109.    The defects in Defendants' products existed at the time the product left Defendants' control and were known to Defendants.

110.    Reasonable safer alternatives exist and were available to Defendants at all relevant times. In fact, many of the Defendants patented feasible alternative products. Thus, the risks of Defendants' products outweighed the benefits.

111.    The defects in Defendants' products proximately caused and have directly resulted in the damages of which Plaintiff complains.

## COUNT 4 – NEGLIGENCE AGAINST ALL DEFENDANTS

112.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

113.    Defendants had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its PFAS chemicals and PFAS-containing products so as to avoid harm to those who would be foreseeably injured by PFAS environmental contamination.

114.    Defendants knew or should have known that their PFAS products would result in the release, discharge, or disposal of PFAS compounds into the environment that would lead to contamination of drinking water supplies and hazards to human health if not treated.

115.    By failing to exercise due care in the design, manufacturing, marketing, testing, promotion, and environmental sampling of their PFAS compounds and/or their PFAS-containing AFFF products, Defendants breached their duty to avoid harm to Plaintiff.

116.    Defendants negligently failed to share, publish, or otherwise expose their internal testing, employee health information, fate and transport studies, and knowledge of the adverse effect of their products on humans, animals, and aquatic life. Defendants and also intentionally, recklessly, and without regard for human life and the environment covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to the PFAS chemicals, compounds, products, and by-products as such relate to the persistence and high mobility of PFAS in the environment, the bio-accumulation of PFAS in humans, animals, and aquatic life, and the environmental fate and transport. Defendants not only negligently failed to inform the public and the Plaintiff of same, but, at various times, failed to warn certain

manufacturers and sellers of AFFF including some of the Defendants in this civil action. The failure to warn and deceptive conduct of Defendants, as to the public, the Plaintiff, and certain manufacturers and sellers of AFFF including some of the Defendants in this civil action, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against the Defendants for failure to warn.

117.    As a result of Defendants' negligence, Plaintiff has incurred, and will continue to incur, investigation, cleanup, remediation, abatement, and removal costs and damages related to PFAS contamination.

118.    Defendants' acts were willful, wanton, or reckless and conducted with a reckless indifference to the rights of Plaintiff.

119.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer damages.

## COUNT 5 – PRIVATE NUISANCE AGAINST ALL DEFENDANTS

120.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

121.    Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has physically invaded Plaintiff's water supply, and unreasonably interfered with, and continues to interfere with, Plaintiff's use and enjoyment of its public water supply systems and the water sources that supply those systems.

122.    The private nuisance created by Defendants is continuing.

123.    Defendants have failed, and continue to fail, to abate the private nuisance.

124.    As a result of the private nuisance, Plaintiff has suffered and continues to suffer,

significant harm and damages, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment, and removal of PFAS constituents that have and will continue to migrate into Plaintiff's water supplies.

## COUNT 6 – PUBLIC NUISANCE AGAINST ALL DEFENDANTS

125.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

126.    Through Defendants' acts and omissions, Defendants' AFFF and PFAS-containing AFFF products and their by-products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to a clean environment, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

127.    Through Defendants' acts and omissions, Defendants' AFFF and PFAS-containing products and by-products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to the use of waters that serve as a source of potable water, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

128.    The public nuisance created by Defendants is continuing.

129.    Defendants have failed, and continue to fail, to abate the public nuisance. The Defendants, in other places in the United States, have paid hundreds of millions of dollars to settle civil lawsuits in attempts to remedy public water supplies and the persons directly affected adversely from drinking water in those other places. Despite this, the Plaintiff expects that the Defendants in this civil action will deny that they engaged in these very same wrongful activities

and conduct in the Danbury, Connecticut area. Defendants have made such baseless denials in other lawsuits filed by other water providers to date.

130.    As a result of the public nuisance, Plaintiff has suffered and continues to suffer, significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's water supplies such that Defendants should be required by injunction to abate the nuisances they have created.

## COUNT 7 – NEGLIGENT MISREPRESENTATION, FRAUD AND DECEIT

131.    Plaintiff realleges and reaffirms each and every allegation set forth in the foregoing paragraphs as if fully stated herein.

132.    This claim is brought under the Connecticut common law of misrepresentation, fraud and deceit.

133.    Defendants negligently, intentionally, and tortuously made false and misleading statements, and failed to disclose, omitted, concealed material facts.

134.    Defendants made misrepresentations and failed to disclose material facts to the public, consumers, and regulatory agencies throughout Connecticut and the United States, in order to induce consumers to purchase and consume AFFF without regard to its environmental and human effects, such that regulatory agencies did not investigate or set regulations regarding AFFF and PFAS.

135.    Specifically, the Defendants' known misrepresentations during the relevant period, which were intended to induce the continued purchase and environmental spread of AFFF, include but are not limited to:

a.      Defendants misrepresented the benefits of AFFF in the context of the environmental and human, animal, and aquatic health;

b.      Defendants misrepresented what they knew or should have known regarding PFAS contamination from the foreseeable use of AFFF;

c.      Defendants misrepresented the environmental persistence of PFAS compounds;

d.      Defendants misrepresented the bio-availability and bio-accumulation of PFAS compounds related to AFFF use;

e.      Defendants misrepresented the carcinogenic nature of PFAS compounds related to AFFF use;

f.      Defendants failed to disclose the dangers to health or the environment inherent in AFFF use within the various MSDSs, instructions, warning labels, advertising, marketing, customer communications, regulatory communications, and product packaging for AFFF;

g.      Defendants misrepresented their actual and/or constructive knowledge of the adverse impacts from PFAS compounds to human health and the environment;

h.      Defendants falsely and deceptively portrayed their efforts and/or commitment to comply with the TSCA; and

i.      Defendants misrepresented the components of their AFFF products, including the breakdown compounds or substances.

136.    Defendants, in the relevant period and with the intent that others rely on their omissions or suppression of information, omitted material facts that Defendants had a duty to disclose by virtue of these Defendants' other representations, including but not limited to:

a.      AFFF contains PFAS chemicals, with the two most widely known and studied being PFOA and PFOS;

b.      PFOS is environmentally persistent;

c.      PFOA is environmentally persistent;

d.      Thousands of gallons of foam solution may be applied during a single release or discharge of AFFF;

e.    If it is not contained, the AFFF reverts from foam to the liquid solution of PFAS and water, and accumulates in sediment, soil, sewers, surface water, and/or groundwater;

f.    AFFFs contain PFAS in their concentrate and formulation and/or has known or foreseeable by-products when the AFFFs are released into the environment;

g.    Once PFASs enter the environment, they are extremely persistent ad resistant to typical environmental degradation processes;

h.    PFASs are thermally stable synthetic organic contaminants, are carcinogenic, and cause ill effects to humans, animals, and aquatic life;

i.    PFASs have high water solubility (mobility), low biodegradation (persistence), and high bioaccumulation in humans, animals, and aquatic life;

j.    Exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects of fetuses during pregnancy or to breastfed infants, cancer, liver effects, immune effects, thyroid effects, and other effects;

k.    All PFAS compounds have generally demonstrated similar characteristics to PFOS and PFOA;

l.    Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA or PFOS;

m.    Studies have shown that PFOS and PFOA, and other PFAS, have the potential to bio-accumulate and bio-magnify in wildlife and humans;

n.    That they failed to report to the EPA the substantial risk of injury to health or the environment from the discharge of AFFF;

o.    That they failed to prevent against PFAS contamination of numerous water sources;

p.    That they failed to conduct meaningful due diligence to ensure that its product did not contaminate the environment in a way that would pose a substantial risk of injury to health or the environment;

q.    Defendants' failure to disclose their financial ties to and role in connection with the FFFC, front groups, and deceptive literature and materials, as more fully described above; and

r.   Such other omission and concealments as described above in this Complaint.

137.   In each of the circumstances described inter alia the foregoing paragraph, Defendants knew that their failure to disclose rendered their prior representations untrue or misleading.

138.   In addition, and independently, Defendants had a duty not to deceive Plaintiffs because Defendants had in their possession unique material knowledge that was unknown, and not knowable, to Plaintiff, its agents, its community, and the public.

139.   Defendants intended and had reason to expect under the operative circumstances that Plaintiff, its agents, its community, and persons on whom Plaintiff and its agents relied would be deceived by Defendants' statements, concealments, and conduct as alleged herein and that Plaintiffs would act or fail to act in reasonable reliance thereon.

140.   Defendants intended that Plaintiff, its agents, its community, and persons on whom Plaintiff and its agents rely would rely on these Defendants' misrepresentations and omissions; Defendants intended and knew that this reasonable and rightful reliance would be induced by these Defendants' misrepresentations and omissions; and, Defendants intended and knew that such reliance would cause Plaintiffs to suffer loss.

141.   Plaintiff rightfully, reasonably, and justifiably relied on Defendants' representations and/or concealments, both directly and indirectly. As the Defendants knew or should have known, Plaintiff was directly and proximately injured as a result of this reliance, and Plaintiff's injuries were directly and proximately caused by this reliance.

142.   As a result of these representations and/or omissions, Plaintiff proceeded under the misapprehension that the health effects that its population were suffering from were simply a result

of conduct by persons other than Defendants. As a consequence, these Defendants prevented Plaintiff from a timelier and more effective response to PFAS contamination.

143.    Defendants' false representations and omissions were material and were made and omitted intentionally and recklessly.

144.    Defendants' misconduct alleged in this case is ongoing and persistent.

145.    Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergency of the sort Plaintiff would reasonably expect to occur and is not part of the normal and expected costs of a community or water provider's services. Plaintiff alleges wrongful acts which are neither discrete nor the sort a community or a water provider can reasonably expect.

146.    Plaintiff has incurred and/or will incur expenditures for special programs over and above ordinary water provider services.

147.    These Defendants' conduct was accompanied by wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

148.    Defendants acted with actual malice because Defendants acted with a conscious disregard for the rights and safety of other persons, and said actions had a great probability of causing substantial harm.

149.    Plaintiff has suffered monetary damages as aforesaid. As such Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, as well as attorney fees and costs and pre- and post-judgment interest.

## COUNT 8 – CIVIL CONSPIRACY

150.    Plaintiff realleges and reaffirms each and every allegation set forth in the foregoing paragraphs as if fully stated herein.

151.    Plaintiff brings this claim under Connecticut common law providing for the civil liability of persons who conspire to commit one or more unlawful acts.

152.    Defendants engaged in a common design between two or more persons to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, an overt act in furtherance of the conspiracy, and resulting injury to Plaintiffs.

153.    Defendants engaged in a combination and an agreement to act in concert in their tortious and/or otherwise fraudulent marketing of AFFF and safety of PFAS in Plaintiff's community.

154.    Defendants engaged in one or more unlawful activities to further the conspiracy. The objects of the conspiracy were fraud, misrepresentation, and other unlawful conduct as described above in this Complaint. Defendants knew that these objects were unlawful and would be accomplished by unlawful means such as fraud, misrepresentations, and omissions.

155.    Some Defendants, to the benefit of all Defendants, conspired with the Fire Fighting Foam Coalition ("FFFC") and other groups to commit unlawful or lawful acts in an unlawful manner. Defendants, the FFFC, and the various other groups with which each of them was allied, knowingly and voluntarily agreed to engage in unfair and deceptive practices to promote and distribute AFFF as an environmentally and health safe method for fire extinguishment by making and disseminating false and misleading statements and misrepresentations to distributors and consumers. Defendants enlisted and/or joined the FFFC and various other groups to make and disseminate these statements in furtherance of their common strategy to increase the sale and distribution of AFFF, and Defendants—along with the FFFC and various groups with whom each of them conspired—knew that the statements they made and disseminated served this purpose.

156.    Each of the participants to the conspiracies outlined above was aware of the

misleading nature of the statements they planned to issue and of the role they played in the scheme to deceptively promote AFFF as safe and effective for the extinguishment of fires. These Defendants and third parties nevertheless agreed to misrepresent the risks, benefits, and superiority of using AFFF containing PFAS to Plaintiffs in return for increased sales and other benefits.

157.     Each of the participants to the conspiracies outlined above was aware of the nuisance resulting from their conduct and agreed to continue the practices described above that resulted in the maintenance of that nuisance.

158.     The Defendants worked together to ensure that the PFAS acceptable contamination level remained high and lobbied under the FFFC against lower contamination levels.

159.     The Defendants further worked together in their failure to monitor for and report that their AFFF presented a substantial risk of injury to health and the environment.

160.     The desired consistency and collective end goal was achieved. Defendants achieved profits through AFFF sales by orchestrating the belief to consumers that AFFF did not have adverse health effects.

161.     By reason of Defendants' unlawful acts, Plaintiff has been damaged and continues to be damaged by paying the costs of Defendants' externalities and has suffered and continues to suffer significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's water supplies, such that Defendants should be required by injunction to abate the nuisances they have created.

162.    Defendants acted with a common understanding or design to commit unlawful acts, as alleged herein, acted purposely, without a reasonable or lawful excuse, which directly caused the injuries alleged herein.

163.    Defendants acted with malice, purposely, intentionally, unlawfully, and without a reasonable or lawful excuse.

164.    Defendants acted with actual malice because Defendants acted with a conscious disregard for the rights and safety of other persons, and said actions had a great probability of causing substantial harm.

165.    As outlined above, Defendants played an active role in determining the substance of the misleading messages issued by FFFC and Front Groups, including providing content themselves, editing and approving content developed by their co-conspirators, and providing information for speaking engagements. Defendants further ensured that these misstatements were widely disseminated, by both distributing the misstatements themselves and providing their co-conspirators with funding and other assistance with distribution. The result was the wide spread of misleading information about the safety, risks, benefits, and superiority of using AFFF with PFAS. Defendants exercised direct editorial control over most of these statements. However, even if Defendants did not directly disseminate or control the content of these misleading statements, they are liable for conspiring with the third parties who did.

166.    Defendants' conduct in furtherance of the conspiracy described herein was not mere parallel conduct because each Defendant acted directly against their commercial interests in not reporting the health risks associated with AFFF use and PFAS contamination. Each Defendant acted against their commercial interests in this regard due to an actual or tacit agreement between

the Defendants that they would not disclose the health risks of AFFF use, so they could all continue to profit from its sale.

167.    Defendants had a meeting of the minds on the object of or course of action for this conspiracy. Defendants knew and agreed upon the unlawful object or course of action for this conspiracy. Defendants also knew that their wrongful actions would inflict injury upon the targets of the conspiracy, including Plaintiffs.

168.    Defendants' conspiracy, and Defendants' actions and omissions in furtherance thereof, caused the direct and foreseeable losses alleged herein.

169.    Defendants' misconduct alleged in this case is ongoing and persistent.

170.    Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergent of the sort of community of water provider would reasonably expect to occur and is not part of the normal and expected costs of a board of health's healthcare services. Plaintiff alleges wrongful acts which are neither discrete nor of the sort a community or water provider can reasonably expect.

171.    Plaintiffs have incurred expenditures for special programs over and above ordinary costs for providing drinking water to the community.

172.    Because of Defendants' dissemination of false information and misleading information of PFAS risks, benefits, and bioaccumulation, and false and misleading statements regarding the long-term health effects of AFFF use and contamination, Defendants are responsible for the costs incurred by Plaintiff.

173.    Defendants conspired to create a public nuisance and to commit tortious conduct and are therefore jointly and severally liable for the damages flowing from the conspiracy.

174.    Plaintiffs therefore request this Court to enter an order awarding judgment in its

favor against Defendants, compelling Defendants to pay the direct and consequential damages, and awarding Plaintiffs such other, further, and different relief as this Court may deem just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, City of Danbury, Connecticut, as to each and every count herein, demands judgment against Defendants, and each of them, individually, jointly, and severally, and request the following relief:

a.   A jury trial and finding or declaration that Defendants engaged in the tortious conduct outlined herein and/or willful, wanton, and careless disregard for the Plaintiff;

b.   An award to Plaintiff for all economic and non-economic damages, including general, compensatory, consequential, and incidental damages;

c.   An order for an award of attorney fees and costs, as provided by law;

d.   An award of pre-judgment and post-judgment interest as provided by law;

e.   Equitable or injunctive relief;

f.   Compensatory damages according to proof including, but not limited to:

  i.   Costs associated with the remediation or abatement of PFAS chemicals in sources of raw water;

  ii.   Costs associated with treating raw water contaminated with PFAS;

  iii.   Costs associated with any soil remediation of PFAS;

  iv.   Diminution of property value caused by PFAS contamination;

g.   Punitive damages for Defendants' willful, wanton, malicious, and/or reckless conduct causing Plaintiff's injuries;

h.   An award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from engaging in similar wrongful conduct in the future; and

i.   An order for all such other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues in the matter.

Dated, this the 11th day of October, 2023,

                                      Respectfully submitted,

                                      Attorneys for the Plaintiff

By:

                      */s/ T. Roe Frazer II*
                      T. Roe Frazer II
                      Thomas Roe Frazer III
                      **FRAZER PLC**
                      30 Burton Hills Boulevard, Suite 450
                      Nashville, Tennessee 37215
                      (615) 647-0990
                      roe@frazer.law
                      trey@frazer.law

                      */s/Agostinho Riberio*
                      Agostinho Riberio
                      Nicole L. Barber
                      Ventura Law
                      235 Main Street
                      Danbury, CT 06810
                      (203) 800-8000
                      augie@venturalaw.com
                      nicole@venturalaw.com